UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA WELSH and
STEPHEN WELSH, as Next Friend
of CW, a minor,

        Plaintiff,                      Hon. Paul L. Maloney

v.                                              Case No. 1:20-cv-1207

GRANDVILLE PUBLIC SCHOOLS, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

    Amanda Welsh and Stephen Welsh, as Next Friends of CW, a minor, have sued the Grandville Public Schools (GPS), and Roger Bearup, Darla England, and Allison Rittenhouse in their individual capacities, asserting various state- and federal-law claims arising out of Rittenhouse's alleged abuse of CW while she was his teacher at South Elementary School in 2019.[1]

    Presently before me are GPS's, England's, and Bearup's Motions to Dismiss Plaintiff's First Amended Complaint (ECF Nos. 46, 48, and 76), which have been referred to me for submission of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[2] The motions are fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that

---

[1] CW also sues John Doe and Jane Doe, who are alleged to have been teacher's aids in CW's classroom who witnessed the abuse of CW but failed to report it. (ECF No. 44 at PageID.430.)

[2] Although CW and Defendants have requested oral argument, I find that oral argument is unnecessary as the parties' briefs adequately develop the issues in contention.

the Court **GRANT** Defendants' motions and dismiss all remaining claims against them **with prejudice**.[3]

## II. Background

### A. Factual Allegations

GPS is a public school district located in West Michigan. Defendant Bearup was the superintendent of GPS, and Defendant England was the principal of South Elementary School—a GPS elementary school—at the time the pertinent events in this case occurred. (ECF No. 44 at PageID.429.)

CW is an eight-year-old boy who has been diagnosed with Autism Spectrum Disorder, Cognitive Impairment, Pes Plantus, Mixed Receptive—Expressive Language Disorder, and Developmental Coordination Disorder. (*Id.* at PageID.431.) CW has attended GPS since 2017, and has been a student at South Elementary School since 2018. (*Id.* at PageID.431–32.) Plaintiffs allege that on September 9, 2019, CW sustained injuries to his neck, including a deep gouge and missing skin with a bloodied scab, when his teacher, Defendant Rittenhouse, forcefully grabbed him by the neck. (*Id.* at PageID.433.) Plaintiffs further allege that Rittenhouse engaged in the same behavioral management technique for several months prior to September 9, 2018, leaving nail gouges and bruises on CW's neck. The abuse occurred in plain view of other students and teacher's aides who were present in the classroom, but they did not prevent or report it. (*Id.* at PageID.432.)

Plaintiffs allege that "South Elementary attempted to cover up the abuse, but later conceded [Rittenhouse] applied overly assertive behavioral modification techniques." (*Id.* at PageID.427.) CW asserts that his parents complained to "school officials about the scratches and bruises," but

---

[3] Pursuant to the October 28, 2021 Stipulated Order (ECF No. 75), CW agreed to dismiss Count XVII (Violation of Mandatory Reporting Duty) against Defendants England and Bearup without prejudice. Those claims are not considered part remaining claims at issue here, as to which I recommend dismissal with prejudice.

2

Rittenhouse continued to abuse CW. (*Id.* at PageID.432–33.) Plaintiffs also allege that, in spite of "numerous complaints," no one at South Elementary ever performed an investigation, and it was not until his counsel sent notification and a settlement demand to GPS and South Elementary officials that an investigation occurred. (*Id.* at PageID.433.) Plaintiffs allege that they informed Defendant Bearup of their complaints during a meeting, but he does not allege when the meeting occurred. (*Id.* at PageID.435.) They do allege, however, that on October 4, 2019, Defendant Bearup informed Amanda Welsh that Rittenhouse had been terminated for using excessive force on CW, that Rittenhouse had abused one other child, and that seven other employees had reported that they observed abuse that had occurred over several months. (*Id.* at PageID.466.)

Plaintiffs also assert that GPS knew the importance of "ensuring properly trained, and otherwise qualified individuals to provide behavioral services for autistic children," and authorized Rittenhouse and other employees to apply verbal and physical modalities to non-verbal autistic children, despite knowing that its employees lacked the requisite licensure, training, and supervision. (*Id.* at PageID.434–35.) The Welshes allege that GPS's failure to reasonably hire, train, retain, and supervise its employees with regard to the provision of behavioral services to non-verbal, autistic children was a foreseeable and proximate cause of the abuse that Rittenhouse inflicted on CW. (*Id.* at PageID.435.)

### B.     Procedural History

The Welshes filed their initial complaint in this case on December 14, 2020, for themselves and as Next Friends of CW, against Defendants GPS, South Elementary School, Rittenhouse, England, and John and Jane Doe. (ECF No. 1.) Counts I through IV asserted claims of negligent training, negligent hiring and retention, negligent supervision, and negligence against GPS and South Elementary. Counts V through VII asserted claims of intentional and negligent infliction of emotional distress and assault and battery against Defendant Rittenhouse. Count VIII asserted

3

vicarious/respondeat superior liability against GPS and South Elementary. Counts IX through XI asserted claims under Section 504 of the Rehabilitation Act of 1973 (RA), the Americans With Disabilities Act (ADA), and the Michigan Persons with Disabilities Civil Rights Act of 1976 (PWDCRA) against Rittenhouse, GPS, and South Elementary. Counts XII through XIV asserted claims for violation of the right to personal security and bodily integrity, excessive use of force, and violation of the right to equal protection, all in violation of the Fourteenth Amendment, against Defendant Rittenhouse. Finally, Count XV alleged a claim for *Monell* liability[4] against GPS and South Elementary.

On March 24, 2021, Defendant England and Defendants GPS and South Elementary filed motions to dismiss. (ECF Nos. 13 and 17.) In addition to arguing that Plaintiffs failed to state claims against them, Defendants argued that the Welshes lacked standing to assert damage claims for themselves for injuries sustained by CW and that, because South Elementary is a property of GPS, it is not a separate legal entity subject to suit. On June 25, 2021, more than two months after the motions to dismissed were fully briefed, the Welshes filed a motion for leave to amend, which was granted on August 3, 2021. (ECF Nos. 35 and 43.) The amended complaint: (1) retained the claims from the original complaint; (2) added Defendant Bearup to the case; and (3) added claims of intentional and negligent infliction of emotional distress against Defendant Bearup (Counts VI and VII); a claim captioned "Violation of Constitutional rights, 42 U.S.C. § 1983; All Plaintiff [sic] vs. All Named Defendant's [sic] (Count XV); a claim for violation of the mandatory duty to report under Mich. Comp. Laws § 722.622(e) (Count XVII); and a second claim under the PWDCRA as to all Defendants (Count XVIII).

---

[4] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

On August 17, 2021, Defendants GPS and England filed their respective motions to dismiss the first amended complaint. (ECF Nos. 46 and 48.) On August 19, 2021, the Court entered a Stipulated Order submitted by the Welshes and Defendant Rittenhouse that: (1) struck all references to damages suffered by the Welshes, who are non-parties to the amended complaint; and (2) dismissed with prejudice the claims against Rittenhouse for negligent infliction of emotional distress and violation of the mandatory duty to report (Counts VII and XVII). (ECF No. 56.) On October 6, 2021, more than two weeks after England's and GPS's pending motions to dismiss the amended complaint were fully briefed, the Welshes moved for leave to file a second amended complaint. (ECF No. 67.) On October 28, 2021, the Court entered a Stipulated Order: (1) withdrawing the Welshes' pending motion for leave to file a second amended complaint; (2) construing the pending ADA claim as brought under Title II rather than Title III, as alleged in the first amended complaint; (3) dismissing Counts I through IV, X, and XVII against GPS; (4) dismissing the violation of the mandatory duty to report claim (Count XVII) against Defendant England; and (5) dismissing the negligent infliction of emotional distress and mandatory duty to report claims (Counts VIII and XVII) against Defendant Bearup. (ECF No. 75 at PageID.832.) Finally, on November 2, 2021, Defendant Bearup filed his motion to dismiss the claims against him in the first amended complaint.

In sum, the remaining claims for purposes of the instant motions are Count VI (intentional infliction of emotional distress against Defendant Bearup); Counts XI, XII, XIII (RA, ADA, and PWDCRA claims against Bearup and GPS) and Count XVII (PWDCRA claim against "All Defendants"); Count XV (Section 1983 claim against "All Named Defendants"); and Count XVI (*Monell* claim against GPS).

5

## II.  Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

## III.  Discussion

### A.  Defendant England

In her motion, Defendant England moved to dismiss the only claims that appeared to apply to her, Counts XV and XVII. As noted above, CW has dismissed Count XVII as to all Defendants, leaving Count XV as the only claim at issue as to Defendant England.

England contends that Count XV is subject to dismissal because no factual allegation set forth in the first amended complaint's 227 paragraphs mentions her by name or indicates what she

did to violate CW's constitutional rights. Count XV purports to assert that all Defendants violated CW's constitutional rights. It alleges that Rittenhouse violated CW's Fourth Amendment rights by "utilizing unjustified, unreasonable, and excessive force against him," and as to England, alleges that she "violated CW's rights under the 4th Amendment by her deliberate indifference to the risk that Defendant Rittenhouse would inflict excessive force on her students, including CW." (ECF No. 44 at PageID.465.)

As an initial matter, Count XV fails to state a claim as to any Defendant, if for no other reason, because a student's claim of excessive force by a teacher is analyzed under the Due Process Clause of the Fourteenth Amendment, not under the Fourth Amendment. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (analyzing student's claim of use of excessive force by a teacher as a substantive due process claim under the Fourteenth Amendment); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996) (applying Fourteenth Amendment "shocks the conscience" standard to students' claims of physical abuse by their teacher/coach); *Kouider v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 784 (N.D. Ohio 2020) ("Where claims for excessive force have been asserted by public school students against public school employees, the Sixth Circuit, consistent with other circuit courts, has applied the shocks-the-conscience standard to determine whether liability should exist.") (footnote omitted).

Regardless, even if Count XV is construed as asserting a Fourteenth Amendment substantive due process claim, it fails as to Defendant England. To state a claim under Section 1983, a plaintiff must allege that he was deprived of a right, privilege, or immunity secured by the Constitution or the laws of the United States and that the deprivation was caused by a person while acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). It is

well established in the Sixth Circuit that a plaintiff asserting a Section 1983 claim must allege personal involvement by each of the named defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of respondeat superior. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g., Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). In short, a "plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint." *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991); *see also Heyne v. Metropolitan Nashville Pub. Schs*. 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (internal quotation marks omitted)).

In spite of its length, the first amended complaint fails to allege a single fact plausibly demonstrating that England participated in, authorized, approved, or knowingly acquiesced in Rittenhouse's abuse of CW. The allegation in paragraph 197 that England "violated CW's rights . . . by her deliberate indifference to the risk that Defendant Rittenhouse would inflict excessive force on her students, including CW," is an unadorned legal conclusion, not a fact. *See Mills v. Barnard*, 869 F.3d 473, 481 (6th Cir. 2017) ("To be sure, the plain statement that Jenkins

8

'intentionally, maliciously, or with reckless disregard' subjected Mills to malicious prosecution is insufficient standing on its own." (brackets and ellipsis omitted)).

The balance of the amended complaint is similarly bereft of facts indicating that England engaged in unconstitutional conduct. Under a substantive due process analysis applicable to a supervisory official, "it is not enough for [CW] to show that [England] w[as] sloppy, reckless or negligent in the performance of [her] duties." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002). Rather, "[CW] must show that, in light of the information [England] possessed, the teacher who engaged in [physical] abuse showed a strong likelihood that [s]he would [continue the abuse], such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of [CW]." *Id.* (internal quotation marks omitted). "Put another way, . . . the plaintiff must show that the defendants' conduct amounted to a tacit authorization of the abuse." *Id.* (internal quotation marks omitted). Thus, a student does "not have a constitutional right to be free from negligence in the supervision of the teacher who is alleged to have actually abused h[im]." *Id.* at 441.

The only actual allegation *from the amended complaint* that CW musters in response to England's motion is paragraph 216 from now-dismissed Count XVII (ECF No. 61 at PageID.669), alleging that "[GPS]'s and South Elementary School officials concealed Defendant Rittenhouse's history of abuse by intentionally destroying complaints and investigation materials." Like paragraph 197, this is a conclusory allegation lacking specific factual content. CW's pleading is littered with similar conclusions. (ECF No. 44 at PageID.427 ("South Elementary attempted to try and cover up the abuse, but then later conceded the teacher applied overly assertive behavior modification techniques . . . ." (¶ 3)); PageID.432 ("The pattern of abuse continued despite complaints made by Amanda and Stephen Welsh." (¶ 37)); PageID.432–33 ("Amanda and Stephen

9

Welsh complained to school officials about the scratches and bruises." (¶ 40)); PageID.433 ("Despite numerous complaints made, no one at South Elementary School ever conducted any investigation . . . ." (¶ 44)); PageID.435 ("South Elementary School was aware of the above as South Elementary was on prior notice form [sic] staff and other parental complaints." (¶ 51)).) None of these allegations concerning "school officials" or "South Elementary School" mentions Defendant England or when the alleged complaints were made. As set forth above, this is crucial to CW's claim, because absent prior knowledge or notice of the situation, there can be no deliberate indifference.[5]

CW also suggests that the Court should permit him to engage in discovery to shore up his allegations. But that is not how it works. Discovery only comes into play when the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In fact, the Supreme Court has directed district courts not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Because this is all CW has, he is not entitled to discovery to unearth a claim.[6]

One additional issue warrants brief discussion. England did not move for dismissal of Count XVII—the PWDCRA claim against "All Defendants," (ECF No. 44 at PageID.471–72)—although she did argue that Counts XV and XVII appeared to be the only claims CW intended to assert against her. (ECF No. 49.) On the other hand, CW did not mention Count XVII in his response to clarify that England is also included in that count. Nonetheless, in light of CW's

---

[5] CW's attempt to distinguish *Iqbal* on the basis that the plaintiff in *Iqbal* alleged that high-ranking government officials subjected him to abuse, whereas here CW is merely alleging that the principal of his school was aware of the abuse, is unconvincing. *Iqbal* made clear that, in all cases, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676.

[6] I do not consider CW to be asserting that the counts set forth at pages 36–40 of the amended complaint (misnumbered as Counts XIV, XIII, and XIV) are asserted against anyone other than Rittenhouse. To the extent those claims are asserted against Defendants England and Bearup, they fail for the same reasons that Count XV fails to state a claim.

concession that "Defendant Bearup cannot be held personally liable for violations of the Americans with Disabilities Act, and the PWDCRA" (ECF No. 81 at PageID.889), the PWDCRA claim against England in Count XVII should likewise be dismissed, as she is in the same boat as Bearup. *See Schuette v. Rand*, No. 18-10497, 2020 WL 7664775, at *6 (E.D. Mich. Dec. 23, 2020) (concluding that because Michigan courts look to the ADA in interpreting the PWDCRA, "individual liability is not available under the PWDCRA").

**B.      Defendant Bearup**

**1.      Intentional Infliction of Emotional Distress**

Defendant Bearup contends that he is entitled to absolute immunity from CW's state-law tort claims, which at this point includes only the intentional infliction of emotional distress claim in Count VI.[7] Michigan's Government Tort Liability Act (GTLA), Mich. Comp. Laws §§ 691.1401 *et seq.* contains the following grant of immunity:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Mich. Comp. Laws § 691.1407(5). Bearup, as the Superintendent of GPS, is covered by the GLTA's grant of immunity as "the highest appointive executive of the school district," because he is "employed by, and answers only to, the school board, the elective body of the district." *Nalepa v. Plymouth-Canton Cmty. Sch. Dist.*, 207 Mich. App. 580, 589 (1994) (citing Mich. Comp. Laws. § 380.247); *see also Soper v. Hoben*, 195 F.3d 845, 851 (6th Cir. 1999) (affirming the district court's finding that the superintendent was entitled to immunity under Section 691.1407(5) on tort

---

[7] In his reply, Bearup also argues that Count VI fails to state a claim because the allegation that he "engaged in extreme and outrageous conduct by failing to act when being appraised of the abuse" (ECF No. 44 at PageID.445), is not extreme and outrageous conduct and amounts to nothing more than negligence. (ECF No. 82 at PageID.894–95.) Bearup is correct, but since he first raised the argument in his reply, I will address only the immunity argument, which adequately disposes of the claim.

11

claims arising out of sexual assault of the plaintiff). In addition, the GTLA does not contain an intentional tort exception to immunity from tort liability. *Genesee Cnty. Drain Comm'r v. Genesee Cnty.*, 309 Mich. App. 317, 328 (2015) (quoting *Harrison v. Corrections Dep't Dir.*, 194 Mich. App. 446, 450 (1992)). In applying the statute, the only questions a court asks are whether the official is the "elective or highest appointive executive official[]" of the governmental unit and whether the official was "acting within the scope of [his] executive authority." *American Transmissions, Inc. v. Attorney Gen.*, 454 Mich. 135, 138 (1997) (quoting statute). The cases CW cites, *McCann v. State of Michigan*, 398 Mich. 65 (1976), *Shunk v. State of Michigan*, 97 Mich. App. 626 (1980), and *Lockaby v. County of Wayne*, 406 Mich. 65 (1979), for the proposition that an intentional tort is not within the exercise or discharge of a government function, are not persuasive as they were decided years before the GLTA was adopted.

As for whether Bearup was acting within the scope of his executive authority, a plaintiff must "include facts that indicate the action at issue was outside the exercise of a governmental function." *Kendricks v. Rehfield*, 270 Mich. App. 679, 681 (2006). In other words, a plaintiff must plead in avoidance of governmental immunity. *See Moraccini v. City of Sterling Heights,* 296 Mich. App. 387, 392 (2012) (quoting *Odom v. Wayne Cnty.,* 482 Mich. 459, 478-479 (2008)). CW fails to meet this requirement, as he alleges no fact in his first amended complaint suggesting that Defendant Bearup was acting outside his executive authority as GPS Superintendent. CW's argument in his brief fails to satisfy this requirement, and it would not avoid immunity even if it appeared in the amended complaint. That is, CW contends that Bearup acted outside the scope of his employment because he failed to protect CW from abuse from Rittenhouse. (ECF No. 81 at PageID.883.) But this argument conflates immunity with liability. Certainly, receiving and handling parent complaints regarding a teacher's classroom conduct constitutes a matter within a

12

superintendent's scope of authority. An alleged failure to act within that authority does not constitute acting outside the scope of that authority.

Accordingly, Defendant Bearup is entitled to governmental immunity on this claim.

### 2. Constitutional Claims

As with Defendant England, Count XV is the only claim under Section 1983 that mentions Defendant Bearup by name and contains the same conclusory "deliberate indifference" allegation against Bearup. As to the balance of the first amended complaint, CW alleges only that the Welshes informed Bearup about the allegations against Rittenhouse on some unspecified date, and that on October 4, 2019, Bearup told Amanda Welsh that Rittenhouse had been terminated for using excessive force against CW.[8] (ECF No. 44 at PageID.435, 466.) For the reasons set forth above regarding the claim against Defendant England, CW fails to present sufficient facts to show that Defendant Bearup was deliberately indifferent to CW's constitutional rights.

### 3. RA, ADA, and PWDCRA Claims

As noted above, CW concedes that Bearup cannot be held individually liable under the ADA and the PWDCRA. The same is true for his RA claim. *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Furthermore, Lee may not maintain an action under the ADA or the RA against the individual defendants identified in his complaint because neither the ADA nor the RA impose liability upon individuals.") (citing 29 U.S.C. § 794(b)).

Accordingly, Bearup is entitled to dismissal of Counts XI through XIII and XVIII.

---

[8] In support of his motion, Bearup submits an undated letter from GPS to parents of children in Rittenhouse's class explaining GPS had received a report about Rittenhouse's abuse on September 25, 2019, and placed her on paid leave pending an investigation. The letter further set forth the results of GPS's investigation and indicated that Rittenhouse would not be returned to the classroom. (ECF No. 77-1.) I have not considered this exhibit because it was not referenced in the first amended complaint.

### C. GPS

GPS moves for dismissal of CW's Section 1983 claims, as well as those under the RA, the ADA, and the PWDCRA. As an initial matter, I recommend that the Court dismiss CW's claims against South Elementary School, as it is a property of GPS and not a separate legal entity subject to suit. GPS raised this issue in its motion and brief (ECF No. 46 at PageID.478; ECF No. 47 at PgeID.483 n.1), and CW has not adequately responded. In deciding a motion to dismiss, a court may judicially notice documents and other information available from reliable sources on the Internet, including government websites. *See Roane Cnty. v. Jacobs Eng'g Grp., Inc.*, No. 3:19-cv-206, 2020 WL 2025613, at *3 (E.D. Tenn. Apr. 27, 2020) (taking judicial notice of a memo published to the TVA's website in deciding a Rule 12(b)(6) motion); *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.' This includes public records and government documents available from reliable sources on the Internet.") (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). As pertinent here, GPS's website lists South Elementary School as one of its seven elementary schools. *See* https://www.gpsbulldogs.org/apps/pages/AboutUs.; *see also* Mich. Comp. Laws § 380.11a(3) (providing that a general powers school district may exercise powers incidental or appropriate to the "provision of public education services in the interests of public elementary and secondary education in the school district").

#### 1. *Monell* Claim

In Count XVI, CW alleges a claim of municipal liability against GPS pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). While municipalities "are considered persons for purposes of § 1983 liability," such liability "attaches only under a narrow set of circumstances." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citing *Monell*,

14

436 U.S. at 690). A municipality may only be liable under Section 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 39 (2010) (citing *Monell*, 436 U.S. at 694). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

As GPS points out, CW failed to respond to its argument that CW's factual allegations do not suffice to state a *Monell* claim. While CW mentions *Monell*, he does so as part of his response to GPS's argument that it is immune from liability on CW's *state law claims*. (ECF No. 62 at PageID.659–60.) CW thus improperly conflates governmental immunity under Michigan law with the requirements for a *Monell* claim under Section 1983. Because CW does not meaningfully respond to GPS's arguments regarding the *Monell* claim, the Court may deem the claim abandoned. *See Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to a motion to dismiss a claim, "the Court assumes he concedes this point and abandons the claim"); *Burke v. Morgan*, No. 06-CV-348-JMH, 2009 WL 514314, at *2 (E.D. Ky. Mar. 2, 2009) (noting that when a plaintiff fails to respond to a motion to dismiss, a court may treat such failure as a knowing abandonment of the claim). In any event, CW fails to state a claim even if the claim is not considered abandoned.

CW claims that the alleged constitutional deprivations "were caused by customs, policies, and established practices" of GPS, including: (1) "Condoning abuse and neglect [sic] staff and

15

students without impunity and without consequence"; (2) "A policy or practice of failing to investigate complaints of suspected abuse of individuals such as CW"; and (3) "[A] policy . . . in which [GPS] trains is [sic] staff members to utilize improper techniques when redirecting Autistic students." (ECF No. 44 at PageID.467.) As with the allegations against England and Bearup, CW supports his municipal liability claim with nothing more than conclusory allegations that fail to meet *Twombly*'s plausibility standard. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388–89 (6th Cir. 2017) (confirming that the Supreme Court's decisions in *Twombly* and *Iqbal* apply to *Monell* claims); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory assertions [of a policy or custom] are not enough to state a *Twombly* plausible *Monell* claim."). For example, CW's allegation that GPS had a policy of condoning abuse and neglect without consequence is simply not plausible without some factual basis for the assertion. *See Taylor v. Neff*, No. 3:21-cv-84, 2021 WL 5988929, at *5 (W.D. Ky. Dec. 17, 2021) ("Taylor's suggestion that Metro Government had a formal policy of permitting or tolerating sexual misconduct committed by its employees is not 'plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570).

CW also alleges a failure-to-train claim. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish this type of claim, a plaintiff must show that: "1) the [municipality's] training program was inadequate for the tasks that [its employees] must perform; 2) the inadequacy was the result of the [municipality's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson*, 925 F.3d at 834 (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). The first element focuses on the adequacy of the municipality's training program. *City of Canton v. Harris*, 489 U.S. 378, 390

(1989). CW fails to establish this element, as the first amended complaint alleges nothing about GPS's hiring practices or the training GPS employees actually receive in redirecting autistic students and why that training was inadequate for the tasks that must be performed. Instead, he simply alleges that the training and supervision of GPS employees was improper and inadequate, without any factual elaboration.

Also absent from the first amended complaint are factual allegations to plausibly establish that GPS was deliberately indifferent to the inadequacy of its training program. Generally speaking, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference[.]" *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Here, again, CW offers no specific factual allegation regarding prior incidents that would have put GPS on notice that its employees were inadequately trained. CW's conclusory allegations about abuse at South Elementary being "systemic and ongoing" and "widespread" are the type of empty statements that are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In short, CW wholly fails to plausibly allege GPS's deliberate indifference.

Accordingly, I recommend that Count XVI be dismissed.

### 2. RA, ADA, and PWDCRA Claims

In Counts XI through XIII and XVIII, CW alleges that GPS violated the RA, the ADA, and the PWDCRA by discriminating against him in the provision of educational benefits, or exclusion from participation in such benefits or programs, solely because of his disability, or manifestations his disability. GPS contends that CW fails to state a claim under all three statutes.

Although CW alleges a violation of Title III of the ADA, the parties have stipulated that such claim is properly brought under Title II, which provides: "Subject to the provisions of this

subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA contains a similar provision, which protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a). Finally, the PWDCRA provides:

> An educational institution shall not . . . [d]iscriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

Mich. Comp. Laws § 1402(a).

Because the requirements of the ADA and the RA are substantially the same, claims under both statutes are often analyzed together. *S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008). Similarly, PWDCRA claims may be analyzed together with ADA claims as "[c]laims under the PWDCRA 'essentially track those under [the ADA].'" *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014) (quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 n.3 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc)).

CW's claims fail to state a claim under any of the three statutes because he does not allege any facts plausibly indicating that Rittenhouse mistreated or abused him *because of* his disability. "Instead, his complaint lists conclusory allegations of discrimination and fails to provide . . . the sufficient factual matter necessary to create an inference of discrimination." *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 626 (6th Cir. 2013) (internal quotation marks and citations omitted). For example, in his RA claim, CW alleges that GPS "deprived CW of the benefits of its federally

supported program by physically and verbally abusing him solely because they [sic] were autistic children." (ECF No. 44 at PageID.454.) But the only allegation of abuse is by Rittenhouse, and while the abuse alleged is reprehensible, no fact in the first amended complaint suggests that she inflicted abuse and mistreatment on CW *because of* his disability. Similarly, CW fails to allege a factual basis for his claim that he was excluded from or denied the benefits of any educational program or activity because of his disability. That is, he does not assert that he missed any portion of the school year or that he was excluded from any school program as a result of Rittenhouse's actions. While CW does allege that his "specific behavioral education and learning goals were significantly frustrated" and that he experienced "behavioral and educational regression" (ECF No. 44 at PageID.454, 457), he fails to provide any factual detail to render these conclusory allegations plausible.

Accordingly, I recommend that Counts XI through XIII and XVIII be dismissed.

### III.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motions to dismiss (ECF Nos. 46, 48, and 76) and dismiss all of CW's claims against GPS, South Elementary, England, and Bearup **with prejudice**.

Dated: January 28, 2022                                          /s/ Sally J. Berens
                                                                 SALLY J. BERENS
                                                                 U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).